**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| LINCOLN MEMORIAL UNIVERSITY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.:_____ |
| | ) |
| MICHAEL CENTER and | ) |
| LUCINDA DIXON, | ) **JURY TRIAL DEMANDED** |
| | ) |
|     Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Lincoln Memorial University ("LMU"), files this Complaint against Defendant Michael Center ("Dr. Center") and Defendant Lucinda Dixon ("Dr. Dixon") (collectively, "Defendants") and, in support thereof, alleges as follows:

## INTRODUCTION

1.     This is an action for breach of contract, intentional interference with business relations, declaratory judgment seeking a judicial determination of ownership of patent rights arising under the patent laws of the United States, Title 35 of the United States Code, and unfair and deceptive trade practices pursuant to Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.  Plaintiff seeks damages, attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief associated with its causes of action.

## THE PARTIES

2.     Plaintiff LMU is a nonprofit corporation of Tennessee having a principal place of business at 6965 Cumberland Gap Parkway, Harrogate, Tennessee 37752.

1

3.    Defendant Dr. Center is an individual with a last known residential address of 4301 Manor Field Way Apt 105, Raleigh, NC 27612. Upon information and belief, Dr. Center is a citizen and resident of the State of North Carolina.

4.    Defendant Dr. Dixon is an individual with a last known residential address of 1031 Carrie Lees Pl, Bogart, GA 30622. Upon information and belief, Dr. Dixon is a citizen and resident of the State of Georgia, residing in Oconee County, Georgia.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331,  28 U.S.C. § 1338(a), 28 U.S.C. § 1367(a) and 28 U.S.C. § 2201.

6.    Alternatively, this Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is diversity among the parties and the amount in controversy, without interest and costs, exceeds $75,000.

7.    This Court has personal jurisdiction over the Defendants because, on information and belief, Defendants do business and/or reside in this judicial district, and thus maintain sufficient minimum contacts with this judicial district.

8.    Upon information and belief, Defendants are business partners and have formed a North Carolina Limited Liability Company named Checkpoint Education, LLC for the purpose of using, commercializing and monetizing the intellectual property at issue in this lawsuit that is rightfully owned by LMU. Upon information and belief, Defendants have operated their newly formed company in the State of Georgia, and sent communications into, and have received communications from, the State of Georgia in connection with the formation and operation of their business enterprise.

2

9.     This Court also has personal jurisdiction over the Defendants because they are joint tortfeasors that have committed tortious acts in the state of Georgia.

10.     Venue properly resides in this judicial district pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

11.     LMU is a private university with a primary campus located in Harrogate, Tennessee.  LMU offers a wide variety of university educational degree programs at both the undergraduate and graduate levels, as well as a number of online-based courses and educational programs, and is accredited by the Southern Association of Colleges and Schools.

### Dr. Dixon Is Employed By LMU And Agrees That
### All Inventions Related to Dr. Dixon's Work Belong to LMU

12.     From November 30, 2020 until January 5, 2024, Defendant Dr. Dixon was an employee of LMU, serving as an assistant professor at LMU's Richard A. Gillespie College of Veterinary Medicine ("CVM").

13.     On information and belief, prior to her employment with LMU, Dr. Dixon had no experience in the field of digital credential platforms and had filed no patent applications or obtained patents on any subject matter.

14.     In or about November of 2020, as a condition of her employment and continued employment with LMU, Dr. Dixon executed and entered into a Faculty Appointment Agreement ("Dr. Dixon's Employment Agreement") with LMU.  A true and correct copy of Dr. Dixon's Employment Agreement is attached hereto as **Exhibit A**.

15.     Dr. Dixon's Employment Agreement included an incorporation by reference to the LMU Employee Handbook 2020-2021 (the "Employee Handbook") and required that Dr. Dixon agree to comply with the policies set forth within the Employee Handbook as a condition of her

employment with LMU.  A true and correct copy of the Employee Handbook is attached hereto as **Exhibit B**.

16.     Among other things, the Employee Handbook, and thus Dr. Dixon's Employment Agreement, required that Dr. Dixon assign any inventions made in the course of her employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU.

17.     Specifically, the Employee Handbook stated:

[I]t is University policy that intellectual property developed by employees, and/or students shall be and become the sole and exclusive property of Lincoln Memorial University if the intellectual property is (a) developed within the person's scope of employment with the University, (b) developed in the course of a project sponsored by the University, (c) developed with the significant use of the University's funds, facilities, services, or equipment, or (d) developed in the course of a project arranged, administered or controlled by the University and sponsored in whole or in part by persons, agencies, or organizations external to the University, absent prior written agreement to the contrary.

**Ex. B**, Employee Handbook, p. 41.

18.     The LMU Employee Handbook, and thus Dr. Dixon's Employment Agreement, also required that Dr. Dixon fully disclose any inventions made in the course of her employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU once the invention was created and before it became the subject of a publication.

4

19.     The LMU Employee Handbook, and thus Dr. Dixon's Employment Agreement, also required that Dr. Dixon comply with the policies set forth in LMU's Office of Research, Grants and Sponsored Programs ("ORGSP") Handbook as a further condition of her employment with LMU. **Ex. B**, Employee Handbook, p. 43. A true and correct copy of the LMU ORGSP Handbook is attached hereto as **Exhibit C**.

20.     The LMU ORGSP Handbook also required that Dr. Dixon assign any inventions made in the course of her employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU.

21.     Specifically, the LMU ORGSP Handbook stated:

> [I]t is University policy that intellectual property developed by faculty, staff, and/or students shall be and become the sole and exclusive property of Lincoln Memorial University if the intellectual property is (a) developed within the person's scope of employment with the University, (b) developed in the course of a project sponsored by the University, (c) developed with the significant use of the University's funds, facilities, services, or equipment, or (d) developed in the course of a project arranged, administered or controlled by the University and sponsored in whole or in part by persons, agencies, or organizations external to the University, absent prior written agreement to the contrary.

**Ex. C**, ORGSP Handbook, § RG:03, pp. 14-15.

22.     The LMU ORGSP Handbook also required that Dr. Dixon fully disclose any inventions made in the course of her employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU once the invention was created and before it became the subject of a publication.

**Dr. Center Is Employed By LMU And Agrees That**
**All Inventions Related to Dr. Dixon's Work Belong to LMU**

23.    From July 1, 2021 until June 30, 2024, Defendant Dr. Center was an employee of LMU, serving as a veterinarian and assistant professor at LMU's CVM.

24.    On information and belief, prior to his employment with LMU, Dr. Center also had no experience in the field of digital credential platforms and had filed no patent applications or obtained patents on any subject matter.

25.    In or about November of 2020, as a condition of his employment and continued employment with LMU, Dr. Center executed and entered into a Faculty Appointment Agreement ("Dr. Center's Employment Agreement") with LMU.  A true and correct copy of Dr. Center's Employment Agreement is attached hereto as **Exhibit D**.

26.    Dr. Dixon's Employment Agreement also included an incorporation by reference to the LMU Employee Handbook and required that Dr. Center agree to comply with the policies set forth within the Employee Handbook as a condition of his employment with LMU. *See* **Ex. B**, Employee Handbook.

27.    The Employee Handbook, and thus Dr. Center's Employment Agreement, required that Dr. Center assign any inventions made in the course of his employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU.

28.    Specifically, the Employee Handbook stated:

[I]t is University policy that intellectual property developed by employees, and/or students shall be and become the sole and exclusive property of Lincoln Memorial University if the intellectual property is (a) developed within the person's scope of employment with the University, (b) developed in the course of a project sponsored by the University, (c) developed with the significant use

of the University's funds, facilities, services, or equipment, or (d) developed in

the course of a project arranged, administered or controlled by the University

and sponsored in whole or in part by persons, agencies, or organizations

external to the University, absent prior written agreement to the contrary.

**Ex. B**, Employee Handbook, p. 41.

29.     The LMU Employee Handbook, and thus Dr. Center's Employment Agreement, also required that Dr. Center fully disclose any inventions made in the course of his employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU once the invention was created and before it became the subject of a publication.

30.     The LMU Employee Handbook, and thus Dr. Center's Employment Agreement, also required that Dr. Center comply with the policies set forth in LMU's ORGSP Handbook as a further condition of his employment with LMU.  *See* **Ex. B**, Employee Handbook, p. 43; **Ex. C**, ORGSP Handbook.

31.     The LMU ORGSP Handbook also required that Dr. Center assign any inventions made in the course of his employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU.

32.     Specifically, the LMU ORGSP Handbook stated:

[I]t is University policy that intellectual property developed by faculty, staff,

and/or students shall be and become the sole and exclusive property of Lincoln

Memorial University if the intellectual property is (a) developed within the

person's scope of employment with the University, (b) developed in the course

of a project sponsored by the University, (c) developed with the significant use

of the University's funds, facilities, services, or equipment, or (d) developed in

the course of a project arranged, administered or controlled by the University

and sponsored in whole or in part by persons, agencies, or organizations

external to the University, absent prior written agreement to the contrary.

**Ex. C**, ORGSP Handbook, § RG:03, pp. 14-15.

33.     The LMU ORGSP Handbook also required that Dr. Center fully disclose any inventions made in the course of his employment with LMU, through any LMU sponsored or LMU supported efforts, or through the use of LMU resources, to LMU once the invention was created and before it became the subject of a publication.

### Dr. Center And Dr. Dixon Participate With Others In Developing The "Method of Digital Badging and Micro Credentialing" For LMU

34.     While employed at LMU, Dr. Center and Dr. Dixon were assigned to participate in a project at LMU involving the development of a digital credential platform and an associated method of providing digital badging and micro credentialing to students at LMU's CVM.

35.     In the course and scope of their employment at LMU, and using LMU resources, Dr. Center and Dr. Dixon participated in the conception and reduction to practice of an invention for a "Method of Digital Badging and Micro Credentialing" (the "Invention").

36.     On information and belief, Dr. Center and Dr. Dixon each contributed to the conception of the idea or the subject matter of the Invention.

37.     On information and belief, additional LMU employees and/or students also contributed to the conception of the idea or the subject matter of the Invention.

38.     The Invention was developed for use by LMU in the course of an LMU sponsored project.

39.     On or about August of 2023, the Invention was implemented at LMU.  In the course of implementing the Invention at LMU, five faculty members at LMU created seven digital badges, each with three levels of achievement (bronze, silver, and gold), corresponding with different levels of student achievement of skill.  Students at LMU's CVM were provided with digital badges and digital micro credentialing using the Invention.

### Dr. Center and Dr. Dixon Improperly File Patent Applications
### For The "Method of Digital Badging and Micro Credentialing" Invention

40.     Dr. Center and Dr. Dixon were obligated to promptly notify LMU of the Invention and to assign ownership of the Invention to LMU.  However, instead of notifying LMU and assigning ownership of the Invention to LMU, on or about May 16, 2023, Dr. Center and Dr. Dixon filed, or caused to be filed on their behalf, United States Provisional Patent Application Serial No. 63/502,443 ("the '443 Application"), titled "Method of Digital Badging and Micro Credentialing." A copy of the '443 Application is attached hereto as **Exhibit E**.

41.     The '443 Application is directed to the Invention and describes the Invention in detail.

42.     The '443 Application lists two inventors: Dr. Center and Dr. Dixon.

43.     On information and belief, Dr. Center and Dr. Dixon filed, or caused to be filed on their behalf, the '443 Application without providing prior notice and disclosure to LMU as required by the LMU Employee Handbook, the LMU ORGSP Handbook, Dr. Center's Employment Agreement, and Dr. Dixon's Employment Agreement.

44.     On information and belief, Dr. Center and Dr. Dixon filed, or caused to be filed on their behalf, the '443 Application without the approval or consent of LMU in violation of the requirements of the LMU Employee Handbook, the LMU ORGSP Handbook, Dr. Center's Employment Agreement, and Dr. Dixon's Employment Agreement.

45.     On or about May 16, 2024, Dr. Center and Dr. Dixon filed, or caused to be filed on their behalf, United States Patent Application Serial No. 18/666,344 ("the '344 Application"), titled "Method of Digital Badging and Micro Credentialing."  A copy of the '344 Application is attached hereto as **Exhibit F**.

46.     The '344 Application lists two inventors: Dr. Center and Dr. Dixon.

47.     The '344 Application is directed to the Invention and describes the Invention in detail.

48.     The United States Patent and Trademark Office ("USPTO") published the '443 Application and the '344 Application on or about November 21, 2024.  The '344 Application was published by the USPTO as United States Patent Application Publication No. 2024/0386082 ("the '082 Publication").

49.     On information and belief, Dr. Center and Dr. Dixon filed, or caused to be filed on their behalf, the '344 Application without providing prior notice and disclosure to LMU as required by the LMU Employee Handbook, the LMU ORGSP Handbook, Dr. Center's Employment Agreement, and Dr. Dixon's Employment Agreement.

50.     On information and belief, Dr. Center and Dr. Dixon filed, or caused to be filed on their behalf, the '344 Application without the approval or consent of LMU in violation of the requirements of the LMU Employee Handbook, the LMU ORGSP Handbook, Dr. Center's Employment Agreement, and Dr. Dixon's Employment Agreement.

51.     On information and belief, Dr. Center's and Dr. Dixon's actions in filing the '344 Application caused, and were intended to cause, the USPTO to publish the '082 Publication without the approval or consent of LMU, and without providing prior notice and disclosure to

LMU as required by the LMU Employee Handbook, the LMU ORGSP Handbook, Dr. Center's Employment Agreement, and Dr. Dixon's Employment Agreement.

### Dr. Center And Dr. Dixon Resign From LMU

52.     On or about November 17, 2023, Dr. Dixon sent a letter of resignation requesting termination of her employment at LMU.  Dr. Dixon's employment with LMU ended on or about January 5, 2024.

53.     On or about March 13, 2024, Dr. Center sent a letter of resignation requesting termination of his employment at LMU.  Dr. Center's employment with LMU ended on or about June 30, 2024.

54.     On information, Dr. Center and Dr. Dixon resigned from LMU with the intent of founding a company to commercialize the Invention.  On information and belief, following their resignation from LMU, Dr. Center and Dr. Dixon began forming Checkpoint Education, LLC, a company that intended to commercialize the Invention in competition with LMU.

55.     On or about July 2, 2024, LMU wrote to Dr. Center and Dr. Dixon through the parties' respective patent counsel and requested that Dr. Center and Dr. Dixon assign ownership of the Invention, together with any and all patent or patent applications directed to the Invention, to LMU.  However, Dr. Center and Dr. Dixon failed to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU.

56.     On information and belief, Center and Dr. Dixon refuse to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU.

### Dr. Center And Dr. Dixon Interfere With LMU's Publications

57.     On or about September 20, 2024, LMU, through its faculty and employees, submitted an academic article to the Journal of Veterinary Medical Education ("JVME") for

publication (the "Article"). The Article described LMU's development, implementation, and use of the Invention at LMU's CVM.

58.     JVME is a peer-reviewed scholarly journal of the American Association of Veterinary Medical Colleges ("AAVMC"). JVME is operated by the University of Toronto Press ("UTP"), a prestigious publisher of academic journals and other academic publications. Publication of an academic article in JVME is a prestigious accomplishment for university faculty in the field of veterinary medicine and veterinary medical education. Successful publication in academic journals like JVME affects a university's overall reputation in the academic field, which impacts a university's ability to recruit both students and new faculty members to the university. Accordingly, LMU has a significant business interest in encouraging its faculty and employees to submit academic articles for publication in JVME and in other scholarly journals.

59.     As part of the process for submitting the Article to JVME for publication, LMU entered into an valid and enforceable contractual agreement with UTP (the "Publishing Agreement"), wherein LMU, together with its faculty and employees who authored the Article, assigned copyright ownership in the Article to UTP and paid a publication fee to UTP in exchange for UTP's review and publication of the Article.

60.     On or about February 22, 2025, UTP published the Article in JVME, thereby providing significant benefit to LMU's reputation among students, potential students, and practitioners in the field of veterinary medicine and veterinary medical education.

61.     On information and belief, shortly after the Article was published in JVME, Dr. Center and Dr. Dixon contacted representatives of JVME and/or UTP and made a number of false and/or misleading statements to the JVME and/or UTP.

62.     Specifically, on information and belief, shortly after the Article was published in JVME, Dr. Center and Dr. Dixon sent an email to representatives of JVME and/or UTP.  On information and belief, in that email, Dr. Center and Dr. Dixon alleged that Dr. Center and Dr. Dixon owned intellectual property rights in the Invention as described in the Article.  On information and belief, Dr. Center and Dr. Dixon alleged in the email that UTP's publication of the Article in JVME infringed the intellectual property rights in the Invention owned by Dr. Center and Dr. Dixon.

63.     On information and belief, Dr. Center and Dr. Dixon demanded that UTP issue a retraction of the Article from JVME.

64.     As a result of Dr. Center's and Dr. Dixon's false and/or misleading statements to the JVME and/or UTP, UTP withdrew the Article from publication in JVME's online publication platform, thereby resulting in significant loss to LMU of the benefits it would have otherwise received through the Publishing Agreement with UTP.

65.     Dr. Center's and Dr. Dixon's false and/or misleading statements to the JVME and/or UTP have resulted in significant reputational damage to LMU.

66.     Dr. Center's and Dr. Dixon's conduct described above has resulted in pecuniary damage to LMU in the sum of at least $75,000 to be proven at trial.

## FIRST CAUSE OF ACTION

### Breach of Written Contract

(Against Defendant Dr. Center)

67.     LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 66, inclusive, as though set forth fully herein.

68.    Dr. Center's Employment Agreement constitutes a valid and enforceable written contract between Dr. Center and LMU.

69.    Dr. Center's Employment Agreement includes the terms of the LMU Employee Handbook and the LMU ORGSP Handbook, including, but not limited to, those terms of LMU Employee Handbook and the LMU ORGSP Handbook discussed above.

70.    LMU has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of Dr. Center's Employment Agreement.

71.    Dr. Center breached Dr. Center's Employment Agreement by filing, or causing to be filed on his and Dr. Dixon's behalf, the '443 Application and the '344 Application without providing prior notice and disclosure to LMU as required by Dr. Center's Employment Agreement, including those terms found in the LMU Employee Handbook and the LMU ORGSP Handbook.

72.    Dr. Center breached and continues to breach Dr. Center's Employment Agreement, including those terms found in the LMU Employee Handbook and the LMU ORGSP Handbook, by failing to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU, and by continuing to fail to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU despite LMU's repeated requests to do so.

73.    As a result of Dr. Center's breach, LMU has been damaged in the sum of at least $75,000 to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of Written Contract

(Against Defendant Dr. Dixon)

74.    LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 73, inclusive, as though set forth fully herein.

75.    Dr. Dixon's Employment Agreement constitutes a valid and enforceable written contract between Dr. Dixon and LMU.

76.    Dr. Dixon's Employment Agreement includes the terms of the LMU Employee Handbook and the LMU ORGSP Handbook, including, but not limited to, those terms of LMU Employee Handbook and the LMU ORGSP Handbook discussed above.

77.    LMU has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of Dr. Dixon's Employment Agreement.

78.    Dr. Dixon breached Dr. Dixon's Employment Agreement by filing, or causing to be filed on her and Dr. Center's behalf, the '443 Application and the '344 Application without providing prior notice and disclosure to LMU as required by Dr. Dixon's Employment Agreement, including those terms found in the LMU Employee Handbook and the LMU ORGSP Handbook.

79.    Dr. Dixon breached and continues to breach Dr. Dixon's Employment Agreement, including those terms found in the LMU Employee Handbook and the LMU ORGSP Handbook, by failing to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU, and by continuing to fail to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU despite LMU's repeated requests to do so.

80.    As a result of Dr. Dixon's breach, LMU has been damaged in the sum of at least $75,000 to be proven at trial.

**THIRD CAUSE OF ACTION**

**Intentional Interference With Contract**

(Against All Defendants)

81.    LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 80, inclusive, as though set forth fully herein.

82.    The Publishing Agreement constitutes a valid and existing contract between LMU and UTP.

83.    On information and belief, Dr. Center and Dr. Dixon knew, or reasonably should have known, of the existence of the Publishing Agreement and of LMU's and UTP's respective obligations under the Publishing Agreement.

84.    By making the above-described false and/or misleading statements to UTP concerning allegations of ownership of intellectual property rights in the Invention as described in the Article by Dr. Center and Dr. Dixon, by making the above-described false and/or misleading statements to UTP concerning allegations that UTP's publication of the Article in JVME infringed the intellectual property rights in the Invention owned by Dr. Center and Dr. Dixon, and by demanding that UTP issue a retraction of the Article from JVME, Dr. Center and Dr. Dixon intended to induce UTP's breach of the Publishing Agreement.

85.    The acts of Dr. Center and Dr. Dixon described herein caused a breach of the Publishing Agreement in that UTP withdrew the Article from publication in JVME's online publication platform without valid cause to do so, thereby resulting in significant loss to LMU of the benefits it would have otherwise received through the Publishing Agreement with UTP.

86.    The acts of Dr. Center and Dr. Dixon have damaged LMU in the sum of at least $75,000 to be proven at trial.

87.     The conduct of Dr. Center and Dr. Dixon as alleged herein was undertaken with the intent to injure LMU, or with willful and conscious disregard for the rights of LMU and constitutes oppressive, malicious, and fraudulent conduct warranting an award of punitive damages in an amount appropriate to punish or set an example of such Defendants.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

(Against All Defendants)

88.     LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 87, inclusive, as though set forth fully herein.

89.     An actual case and controversy now exists between LMU and Defendants Dr. Center and Dr. Dixon.  LMU contents that the Invention and the subject matter represented in the '443 Application and the '344 Application are required to be assigned to LMU under Dr. Center's Employment Agreement and Dr. Dixon's Employment Agreement, each of which incorporates the terms of the LMU Employee Handbook and the LMU ORGSP Handbook.

90.     LMU is informed and believes that Defendants assert that the Invention and the subject matter represented in the '443 Application and the '344 Application are the Defendants' property and are not required to be assigned to LMU.

91.     LMU desires a judicial determination of the respective rights, duties, and obligations of the parties in connection with the matters herein alleged, and a judgment in favor of LMU as to such matters.

**FIFTH CAUSE OF ACTION**

**Georgia Statutory Deceptive Trade Practices**

(Against All Defendants)

92.     LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 91, inclusive, as though set forth fully herein.

93.     By making the above-described false and/or misleading statements to UTP concerning allegations of ownership of intellectual property rights in the Invention as described in the Article by Dr. Center and Dr. Dixon, by making the above-described false and/or misleading statements to UTP concerning allegations that UTP's publication of the Article in JVME infringed the intellectual property rights in the Invention owned by Dr. Center and Dr. Dixon, and by demanding that UTP issue a retraction of the Article from JVME, Dr. Center and Dr. Dixon have disparaged LMU's business by the making of false or misleading representations of fact, in violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

94.     On information and belief, Dr. Center's and Dr. Dixon's acts were with knowledge, and in willful disregard, of LMU's rights.

95.     Dr. Center and Dr. Dixon have caused and, unless enjoined, will continue to cause irreparable harm to LMU's business and goodwill, for which LMU has no adequate remedy at law. As a result of Dr. Center's and Dr. Dixon's willful and intentional misconduct, LMU is entitled to appropriate relief, including permanent injunctive relief, monetary damages, and any and all profits realized by Dr. Center and Dr. Dixon as a result of their tortious conduct.

96.     LMU is entitled to an award of attorneys' fees pursuant to O.C.G.A. § 10-1-373, since Dr. Center and Dr. Dixon have willfully engaged in the foregoing deceptive trade practices, knowing them to be deceptive.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment, Pleaded in the Alternative

(Against All Defendants)

97.    LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 96, inclusive, as though set forth fully herein.

98.    To the extent, and only to the extent, the dispute between the parties is not governed by the respective contracts between the parties, LMU pleads in the alternative that Defendants have been unjustly enriched through the use of the resources, funds, facilities, equipment, technological information  and other benefits conferred by LMU to the Defendants in the development of the Invention, and their failure to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU.

99.    The Invention was developed  by Defendants, among others, (1) within the Defendants' scope of employment with LMU, (2) in the course of a project sponsored by LMU, (3) with the significant use of LMU funds, facilities, services, and equipment, and (4) in the course of a project administered and controlled by LMU.

100.    These benefits conferred on Defendants by LMU would result in an unjust enrichment unless Defendants are required to assign ownership of the Invention, the '443 Application, and the '344 Application to LMU.

101.    Defendants have been unjustly enriched by improperly retaining ownership of the Invention, the '443 Application, and the '344 Application that was developed through significant use of LMU's funds, personnel, facilities, equipment, materials and technological information.

102.    Equity and good conscience demand that ownership of the Invention, the '443 Application, and the '344 Application be returned to LMU.

103.    Defendants are not entitled to retain ownership of the Invention, the '443 Application, and the '344 Application.

104.    Defendants should be equitably estopped from retaining any ownership rights in the Invention, the '443 Application, and the '344 Application.

105.    To the extent that Defendants benefit and obtain a pecuniary advantage based on this conduct, Defendants are not legally entitled to retain such benefit and advantage. Any enrichment to Defendants resulting from the conduct described above is unjust and unequitable and at the expense of LMU.

106.    LMU is entitled to be compensated for any business, payments, or opportunities that Defendants have received as result of their purported ownership of the Invention.

## SEVENTH CAUSE OF ACTION

### Attorneys' Fees and Litigation Expenses Pursuant to O.C.G.A. § 13-6-11

(Against All Defendants)

107.    LMU re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 106, inclusive, as though set forth fully herein.

108.    In furtherance of their breaches of contract and tortious conduct as described in the paragraphs above, Defendants have acted in bad faith, been stubbornly litigious, and have caused LMU unnecessary trouble and expense.

109.    Defendants' willful and malicious conduct therefore further entitles LMU to recovery of its attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a trial by jury on all issues so triable and prays for judgment against Defendants as follows:

1.      That the Plaintiff be awarded actual damages in the amount of at least $75,000 to be proven at trial;

2.      That a declaration issue that LMU is the rightful owner of the Invention, in the '443 Application, and in the '334 Application;

3.      That a permanent injunction issue requiring Defendants to assign all rights to the inventions claimed in the Invention, in the '443 Application, and in the '334 Application, to LMU;

4.      That a permanent injunction issue restraining and enjoining Defendants and each of their officers, agents, servants and employees from further acts of intentional interference with contract against Plaintiff;

5.      That a permanent injunction issue restraining and enjoining Defendants and each of their officers, agents, servants and employees from further acts of deceptive trade practices against Plaintiff;

6.      That Defendants be required to account for all of their gains, profits, and advantages realized from their unlawful activities described herein;

7.      That Plaintiff be awarded restitution and disgorgement in an amount to be proven at trial;

8.      That Plaintiff be awarded an amount adequate to compensate it for Defendants' tortious acts complained of herein, together with interest and costs as fixed by this Court;

9.      That the Court award Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful tortious conduct;

10.    That Plaintiff be awarded pre-judgment interest on any damages award to Plaintiff;

11.    That this case be deemed an exceptional case and that Plaintiff be awarded its attorney fees and costs of suit in this action pursuant to O.C.G.A. § 10-1-373 and O.C.G.A. § 13-6-11; and

12.    That the Court grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this the 1st day of April, 2025.

*/s/ John G. Perry*
John G. Perry
Georgia Bar No. 141609
Meghan E. Aubry
Georgia Bar No. 633349
WOMBLE BOND DICKINSON (US) LLP
1331 Spring St., N.W., Suite 1400
Atlanta, Georgia 30309
(404) 872-7000 (telephone)
(404) 888-7490 (facsimile)
John.Perry@wbd-us.com
Meghan.Aubry@wbd-us.com

Jacob G. Horton (*pro hac vice forthcoming*)
BLANCHARD HORTON PLLC
P.O. Box 5657
Oak Ridge, Tennessee 37831
(865) 269-2673

***Attorneys For Plaintiff Lincoln Memorial University***
